UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Zion Alexander,<br><br>                              Plaintiff,<br><br>        -against-<br><br>City of New York et al.,<br><br>                              Defendants. | 24-cv-8084 (AS)<br><br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Plaintiff Zion Alexander alleges that he was denied medical treatment in jail in violation of his constitutional rights. Defendants are two correctional officers, a doctor who works in the jail, the City of New York, and the city contractor who employs the doctor. They move to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the City's and individual defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion filed by the Physician Affiliate Group of New York, P.C. (PAGNY) is GRANTED.

## BACKGROUND

Alexander is a prisoner who at all relevant times was housed in the George R. Vierno Center at Rikers Island in New York City.[1] Dkt. 1 at 2. On the evening of September 20, 2024, Alexander informed Corrections Officer Paul Reynolds that he was suffering from "extreme chest pain," an asthma attack, or "other chest and v[a]scular pain." *Id.* at 4 (capitalization altered). Reynolds informed Alexander that he would notify the medical clinic, but Alexander alleges that he was not seen by any medical staff and that Reynolds failed to produce an incident report. *Id.*

Two days later, Alexander suffered an "overwhelming tight compression pain" that made him "drop to the floor and gasp for air for several minu[te]s." *Id.* (capitalization altered). Corrections Officer Idrissa Kouanda radioed for medical attention, and Dr. Rhodina Lynn Williams arrived. *Id.* at 4–5. Williams immediately declared that there was nothing wrong with Alexander. *Id.* at 5. She then started to obtain, but did not finish taking, Alexander's vitals. *Id.* She then left, and directed Kouanda to "leave [Alexander] on the floor," as she "d[idn't] have time for this." *Id.*

On October 21, 2024, Alexander filed this lawsuit *pro se* under 42 U.S.C. § 1983, alleging deliberate indifference of his medical needs. Dkt. 1. Alexander's complaint listed the City of New York and Williams as defendants. *Id.* at 1–2. The Court added Reynolds, Kouanda, and PAGNY

---

[1] The factual background is derived from Alexander's complaint. The Court assumes the truth of all factual allegations in his complaint for the purposes of this motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

as defendants. Dkt. 7; Fed. R Civ. P. 21. Defendants subsequently moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dkts. 22, 28.

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 298–99 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 299 (quoting *Iqbal*, 556 U.S. at 678). When evaluating whether a complaint clears this bar, the Court must "accept[] all factual allegations in the complaint as true[] and draw[] all reasonable inferences in the plaintiff's favor." *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

Courts construe a *pro se* complaint "liberally" and consider "the strongest arguments" the complaint suggests. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.*

## DISCUSSION

### I. The Court cannot conclude, at this point, that Alexander failed to exhaust his administrative remedies

The City and the individual defendants first argue that Alexander has failed to exhaust the remedies available to him through the prison grievance system. This argument fails at this stage of the litigation.

The Prison Litigation Reform Act mandates that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Importantly, the requirement that a plaintiff exhaust administrative remedies through the prison grievance system is an affirmative defense, not an element of the plaintiff's claim that he must plead. *Jones v. Bock*, 549 U.S. 199, 212 (2007).

Defendants first point to the fact that Alexander's complaint was filed only about a month after the alleged incident, which they argue is an insufficient amount of time to complete the administrative review process and necessarily implies that Alexander failed to exhaust available remedies. Dkt. 23 at 4–8. This argument fails for two reasons.

*First*, defendants fail to show that the administrative review process necessarily takes more than a month to complete. Defendants state that Alexander was required to complete "four sequential steps" (and then, puzzlingly, they list eight steps that he was supposed to complete). *Id.* at 6. But defendants cite only to internal regulations that list deadlines for various steps and cannot

definitively show that prison officials would not have responded very quickly, faster than the maximum allowable time. Notably, defendants' assertion that "[a]t minimum, completing the entire process would require approximately 30–40 days," *id.* at 7, is devoid of any citation to any authority, and appears to be based on counsel's own assumptions.[2]

*Second*, even if the Court were to conclude that there was no way Alexander exhausted his administrative remedies, defendants fail to rule out any exception to the exhaustion requirement. They point to the fact that Alexander has not alleged any facts that would satisfy an exception to the requirement. *Id.* But this amounts to an improper attempt to shift their burden to the plaintiff. Since exhaustion is an affirmative defense, Alexander is not required to plead any facts in support of his exhaustion. And on the face of the complaint, the Court cannot conclude definitively that no exception would apply.

The Court therefore cannot conclude at this stage that Alexander failed to exhaust his administrative remedies. Of course, since exhaustion is required "before filing suit," *Jones*, 549 U.S. at 202, Alexander should be aware that the Court may grant summary judgment to defendants and dismiss the case if, after discovery, it appears that he did not exhaust the grievance procedures before he filed his complaint and cannot point to any exception to the exhaustion requirement that would apply.

## II.    Alexander's claim against Williams may proceed

Turning to the merits, the Court first considers Alexander's claims against Williams. The Court concludes that Alexander has stated a claim against Williams for deliberate indifference to his serious medical needs.

The Eighth and Fourteenth Amendments prohibit the unconstitutional denial of medical care to inmates under the Due Process and Cruel and Unusual Punishments Clauses.[3] Under both amendments, Alexander must show that (1) the deprivation was "sufficiently serious" and (2) that the defendant acted or failed to act with a sufficiently culpable mental state. *Maldonado*, 460 F. Supp. 3d at 395 (Fourteenth Amendment); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (Eighth Amendment). Under the Eighth Amendment, the second prong is a subjective standard,

---

[2] Further, since approximately 30 days elapsed between the alleged incident and the filing of the complaint, it would appear possible that Alexander could have exhausted his administrative remedies even under defendants' timeline.

[3] Which amendment applies depends on whether Alexander was a pre-trial detainee or had been convicted at the time of the alleged incidents. The Eighth Amendment applies to convicted prisoners, while the Fourteenth Amendment applies to pre-trial detainees. *Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 395 (S.D.N.Y. 2020). Alexander's complaint is not clear on whether he was in pre-trial detention or had been convicted of a crime, but defendants appear to concede he was in pre-trial detention, Dkt. 23 at 8, where his rights would be "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Maldonado*, 460 F. Supp. 3d at 395 (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)). In any event, the results are the same under either provision for the purposes of the motion to dismiss.

whereas it is an objective standard under the Fourteenth Amendment. *Maldonado*, 460 F. Supp. 3d at 395. Alexander's complaint meets both prongs with respect to Williams.

### A. Alexander has alleged a "sufficiently serious" deprivation

The first question is whether Alexander has stated a claim for a "sufficiently serious" deprivation of medical care. Alexander has alleged two incidents where he had extreme chest pain, the second incident resulting in his falling to the ground and gasping for air for several minutes. In response, he alleges that Williams provided him no treatment and only performed cursory checks of his vitals (which she did not even complete).

Although Alexander's precise medical condition (if any) is not clear from the complaint, he has stated a plausible claim that there was a sufficiently serious deprivation of medical care. Significant pain in and of itself can be deserving of treatment, and chest pains could be evidence of more serious conditions. *See, e.g.*, *Mata v. Saiz*, 427 F.3d 745, 753–54 (10th Cir. 2005) (holding that the plaintiff's "severe chest pain" was "sufficiently serious" on its own even apart from a subsequent heart attack). And the existence of a "deprivation" appears clear, as Alexander alleges that he received no treatment and that Williams declared that she did not have time for him. It is plausible that Alexander's lack of medical treatment could be a "sufficiently serious" deprivation of treatment that would give rise to a constitutional claim.

Defendants respond by pointing to the lack of evidence that Williams did not complete an examination of Alexander's vitals or that she declared that she did not have time for him. Dkt. 23 at 9, 10. This argument is meritless, as a plaintiff is not required to provide evidence to support the allegations in his complaint to survive a motion to dismiss. *See* Fed. R. Civ. P. 8(a)(2) (requiring only a "a short and plain statement of the claim showing that the pleader is entitled to relief").

Taken together, Alexander has plausibly alleged that Williams's inaction caused a "sufficiently serious" deprivation of medical treatment.

### B. Alexander has alleged that Williams had a sufficiently culpable mental state

The second question is whether Williams had a sufficiently culpable mental state. Put another way, the question is whether she was deliberately indifferent to his serious medical needs. The Court concludes that Alexander has plausibly alleged that Williams was deliberately indifferent.

Three facts in particular in Alexander's complaint give rise to a plausible inference that Williams was deliberately indifferent to his medical needs: (1) she immediately declared upon arrival that there was nothing wrong with Alexander before examining him; (2) she did not complete the check of his vitals after arriving; and (3) she left quickly, saying that she did not have time for Alexander. Construing the facts in the light most favorable to Alexander, those facts can give rise to an inference that Williams had considered the medical risks to Alexander and chose to ignore them. That is sufficient to raise a plausible claim that she was deliberately indifferent to his serious medical needs under either an objective or subjective standard, rather than merely negligent. While defendants cast doubt on whether Alexander's account is accurate and argue that he received all the medical care he needed, Dkt. 23 at 10–11, the Court at this point is solely looking to whether

4

the complaint contains sufficient factual assertions, that if true, give rise to a plausible claim for relief. Here, it does. The Court thus DENIES Williams's motion to dismiss.

### III.    Alexander's claims against the two correctional officers are dismissed

By contrast, the Court concludes that Alexander has failed to state a claim against the two correctional officers. Alexander appears to "no[t] contest" the officers' motion to dismiss. Dkt. 35 at 3. But even if he does contest the motion, Alexander does not allege sufficient facts to suggest that either officer was deliberately indifferent to his medical needs.[4]

According to Alexander's complaint, it appears that Reynolds took his complaints about medical pain seriously and said that he would contact the medical clinic. While Alexander says that no one from the clinic saw him that day, there is no allegation that Reynolds was responsible for the lack of follow up—as it could have been due to a miscommunication, or even deliberate indifference on the part of the medical staff. And while Alexander says that Reynolds failed to file an incident report, that alone does not give rise to a claim of deliberate indifference. The Court GRANTS Reynolds's motion to dismiss.

As to Kouanda, there is similarly no claim of deliberate indifference. From the allegations in the complaint, Kouanda appears to have called Williams to check on Alexander immediately after the onset of Alexander's symptoms. Dkt. 1 at 4–5. While Alexander does mention that Kouanda "observed" Alexander on the ground "without intervening" in the time before Williams arrived, that fact alone does not give rise to an inference of deliberate indifference. That's because there is no allegation that Kouanda, a correctional officer, had any medical training or could have provided any other useful assistance in the time it took Williams to arrive. The Court GRANTS Kouanda's motion to dismiss.

### IV.    Alexander fails to state a *Monell* claim against the City

The Court next turns to Alexander's claim against the City. Liability under Section 1983 for a municipality is governed by *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). To state a *Monell* claim, a plaintiff must allege "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Chislett v. New York City Dep't of Educ.*, 157 F.4th 172, 184 (2d Cir. 2025) (quoting *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020)).

Alexander's claim fails as he has not alleged a municipal policy or custom that caused a deprivation of his rights. Although he alleges that his constitutional rights were violated, he has not alleged facts that suggest that the City has a policy or custom that results in the denial of medical care to inmates. Although he refers to the "City of New York Rikers Island 'Inadequate Medical System,'" Dkt. 1 at 4, an allegation of inadequacy is a legal conclusion, not a factual allegation.

---

[4] Because the Court concludes that Alexander fails to state a claim that the officers violated his constitutional rights, the Court does not address the officers' alternative argument that they were shielded by qualified immunity.

Alexander must explain what facts suggest a policy leading to inadequate medical care to state a claim. As a policy or custom is a required element of a *Monell* claim, Alexander's claim against the City necessarily fails. The Court GRANTS the City's motion to dismiss.

## V.    Alexander fails to state a *Monell* claim against PAGNY

In a separate motion, PAGNY moves to dismiss *Monell* claims against it. PAGNY first tries to argue that it cannot be liable under *Monell* as it is a "private entity" that contracts with the government to provide medical care at Rikers Island. Dkt. 29 at 5. This argument fails. Though government contractors "are not municipalities, conduct that is formally private may be so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action." *Davis v. Westchester Cnty.*, 2021 WL 3604762, at *4 (S.D.N.Y. Aug. 12, 2021) (internal quotation marks omitted) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 847 (1982)). Since PAGNY is sued in its "official capacity as [a] prison contractor[], [it] can also be held liable under Section 1983." *Id.*; *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 904 (6th Cir. 2018) ("A private entity . . . that contracts to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function."); *Tutora v. Aramark Corr. Servs.*, 2022 WL 2237567, at *7 (S.D.N.Y. June 22, 2022) (holding that a prison food service provider "stepped into the shoes" of the county government and could be liable under *Monell*).

However, Alexander's claims against PAGNY fail for a similar reason that his claim against the City fails—he does not allege facts suggesting PAGNY has a policy or custom of denying medical care to inmates. The Court therefore GRANTS PAGNY's motion to dismiss.

## VI.    The Court grants Alexander leave to amend

The final question before the Court is whether Alexander should be granted leave to amend his complaint to try to reinstate claims against the officers, the City, or PAGNY. The Federal Rules direct the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Given Alexander's *pro se* status, the lack of prior amendment, and the complexity of claims under Section 1983 and *Monell*, the Court grants Alexander leave to amend his complaint. Should Alexander wish to reinstate his claims against the defendants that the Court has dismissed from the case, he may file an amended complaint within 28 days to remedy the deficiencies mentioned in this opinion. However, as the Court does not dismiss this action entirely and permits the claims against Williams to proceed, Alexander may instead wish to avoid delay and continue with this action against Williams alone.

## CONCLUSION

The City's and the individuals' motion to dismiss, Dkt. 22, is GRANTED IN PART AND DENIED IN PART. Claims against the City, Reynolds, and Kouanda are DISMISSED. The claim against Williams may proceed. PAGNY's motion to dismiss, Dkt. 28, is GRANTED.

Within 28 days of this order, Alexander may file an amended complaint should he wish to revive his claims against the City, the officers, or PAGNY. Should he forgo the opportunity to file

6

an amended complaint, the parties are directed to meet and confer and propose a schedule by February 16, 2026, for discovery in the case against Williams, which could include the disclosure of any bodycam footage from the officers that Alexander alleges exists. Williams may delay filing an answer until 14 days after the time for Alexander to file an amended complaint has expired.

The Clerk of Court is respectfully directed to terminate the motions at Dkts. 22 and 28.

SO ORDERED.

Dated: December 16, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge

7